IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY ADAMO and MICHAEL GILL, | : : : | No. 1:10-CV-02382 |
| **Plaintiffs** | : : : | |
| v. | : : | |
| MICHAEL DILLON, et al., | : : | (Judge Rambo) |
| **Defendants** | : | |

## **M E M O R A N D U M**

This is a civil rights action brought by Plaintiff Anthony Adamo ("Adamo"), a licensed race horse trainer, and Plaintiff Michael Gill ("Gill"), a licensed race horse owner, against several past and present officials of the Pennsylvania Horse Racing Commission ("the Commission"). Plaintiffs claim that Defendants violated their Fifth and Fourteenth Amendment rights to procedural due process and equal protection under the law when they were ejected from a race course without notice or a hearing. Before the court is Defendants' motion to dismiss. (Doc. 8.) For the reasons set forth below, the court will deny Defendants' motion.

## **I.    Background**

The following facts are taken from Plaintiffs' complaint and are taken as true for purposes of disposing of the instant motion. On February 2, 2010, Defendant Dillon issued orders ejecting Plaintiffs Adamo and Gill from Penn National Race Course in part due to complaints from several jockeys that "all Michael Gill['s] horses, trained by Adamo and other trainers, were somehow

fundamentally unsound in a way that endangered the safety of all jockeys riding in a race against them." (Doc. 1, Complaint at ¶¶ 16, 29, 30, 59.) The orders were issued "pending final resolution of the matter" and without hearings. (*Id*. at ¶¶ 29, 30, 31.) Plaintiffs were given 48 hours to remove Gill's horses from the premises and were not allowed to participate in racing at Penn National. (*Id.* at ¶¶ 32, 33, 60, 61.) Adamo requested a hearing in front of the Commission regarding his ejection and also requested a supersedeas of the ejection order pending his hearing. (*Id.* at ¶¶ 35, 36.) The Commission never scheduled a hearing. (*Id.* at ¶ 39.) On March 5, 2010, Defendant Dillon issued an order rescinding the ejection order against Adamo. (*Id.* at ¶ 40.) That order stated, in part, that the "Commission hereby deems the February 2, 2010 Ejection matter and Anthony Adamo's request for an administrative hearing as moot. Accordingly, no hearing will be scheduled." (*Id.* at ¶ 41.) On May 18, 2010, Plaintiff Gill requested that the Commission rescind his ejection or, in the alternative, hold a hearing on the matter. (*Id.* at ¶¶ 79, 80.) On July 6, 2010, the Commission stated that Gill's ejection is final, no hearing will be held on the matter, and Gill remains barred from Penn National. (*Id*. at ¶ 81.)

**II.      Legal Standard**

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)). Additionally,

the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations in original)). In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to

3

the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

### III.     Discussion

In order to prevail on a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show (1) that he possessed a life, liberty, or property interest within the meaning of the Fourteenth Amendment, and (2) that he did not have procedures available to him that would provide him with "due process of law." *Rockledge Dev. Co. v. Wright Township*, 2011 WL 588068, at *2 (M.D. Pa. Feb. 10, 2011) (citing *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)). More

specifically, a plaintiff must prove each of the following five elements in relation to a § 1983 procedural due process claim:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

*Id.* (citing *Sample v. Diecks*, 885 F.2d 1099, 1113-14 (3d Cir. 1989)).

Defendants argue that Plaintiffs failed to state a procedural due process claim because Plaintiffs do not have a property interest in their horse racing licenses. (Br. in Supp. of Mot. to Dismiss at 3.) In support, Defendants note that the state legislature enacted legislation specifically stating that no property interest exists in such licenses. 4 P.S. § 325.213(a) ("Each commission shall license trainers, jockeys, drivers, persons participating in thoroughbred and harness horse race meetings, horse owners and all other persons and vendors exercising their occupation or employed at thoroughbred and harness horse race meetings. *The license gives its holder a privilege to engage in the specified activity, but the license does not give its holder a property right.*") (emphasis added); *see also* 4 P.S. § 325.209(a) ("Any corporation desiring to conduct horse race meetings at which pari-mutuel wagering shall be permitted may apply to the appropriate commission for a license. *The license gives its holder the privilege to conduct horse race meetings at which pari-mutuel wagering is permitted. The license does not give its holder a property right.*") (emphasis added.)

In response, Plaintiffs contend that, notwithstanding the above-quoted statutory language, Pennsylvania regulations nevertheless grant a set of procedural rights to licensees facing ejection. (Br. in Opp. to Def.'s Mot. to Dismiss at 3.) Plaintiffs cite to regulations that require a timely hearing following an ejection. (*Id.*) (citing 58 Pa. Code § 165.213(b & c)). Thus, in Plaintiff's view, the regulations provide certain due process protections of which they were deprived as a result of Defendants' failure to hold hearings on the ejections. (*Id.*) Plaintiffs also claim procedural due process violations in light of the harm and loss caused by their ejections. (*Id.*) Plaintiffs argue that ejection is more serious than a suspension because, unlike a suspension, ejection requires that the licensees' horses be removed from the grounds. (*Id.*) Thus, Plaintiffs claim that they suffered irreparable harm and a grievous loss to an even greater extent than they would have had they been merely suspended because, not only were they precluded from racing, but they were also forced to undertake efforts to remove the horses. (*Id.*)

Our disposition of this motion hinges in part on whether Plaintiffs' licenses constitute a property interest sufficient to invoke protection of the Due Process Clause. Notwithstanding the brevity of the parties' briefs, our review of relevant caselaw suggests that this issue is not as clear-cut as the parties contend. For the reasons set forth below, the court finds that Plaintiffs' complaint sufficiently pleads a cause of action to withstand Rule 12(b)(6) scrutiny and therefore the motion to dismiss will be denied.

Arguably, our analysis could end with a plain reading of the Pennsylvania statute that explicitly states "the license does not give its holder a property right." 4 P.S. § 325.213(a); 4 P.S. § 325.209(a). Notably, however,

Defendants are unable to point to any controlling caselaw that interprets this language. Rather, Defendants cite to *Jackson v. Miller*, 93 B.R. 421 (W.D. Pa. 1988), which is distinguishable from the case at bar. In *Jackson*, the court analyzed similar statutory language pertaining to *liquor* licenses in a *bankruptcy* context. The court noted that amended statutory language that states "the license shall continue as a personal privilege granted by the board and nothing therein shall constitute the license as property" prevented a liquor license from being considered property or a valid security interest under the Uniform Commercial Code. *Id*. at 422-23 (quoting 47 P.S. § 4-468(b.1)). The Defendants also cite *Hawkeye Commodity Promotions, Inc v. Vilsack*, 486 F.3d 430, 440 (8th Cir. 2007). In that case, the Eight Circuit Court of Appeals similarly found that a monitor vending machines (MVM) retailer license is considered a privilege, not a legal right, under Iowa regulations, and therefore it cannot be sold, assigned or transferred. Thus, the court found the license lacks the indicia of a property interest for the purposes of the Takings Clause. *Id.* However, neither case is binding on this court and neither case addresses whether a race horse trainer's or owner's license constitutes a property interest for the purposes of assessing a procedural due process claim.

Precisely what constitutes a property interest is an inquiry that evades clear definition. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 206, 313 (1950) ("Many controversies have raged about the cryptic and abstract words of the Due Process Clause. . . ."). It has been said that a person has a property interest in benefits to which that person "has a legitimate claim of entitlement." *Board of Regents v. Roth*, 408 U.S. 564, 577. The Supreme Court's decision in *Barry v. Barchi*, 443 U.S. 55 (1979) is instructive. In that case, John Barchi, a licensed

7

harness race trainer, was advised by the New York State Racing and Wagering Board that one of his horses tested positive for a prohibited substance. As a result, Barchi's license was suspended for fifteen days. The Court ultimately held that the suspension violated the Due Process Clause of the Fourteenth Amendment because Barchi was not afforded the opportunity for a prompt post-suspension hearing. In determining that Barchi had a property interest in his license, the Court noted that, under New York law, a license may not be revoked or suspended at the discretion of the racing authorities. *Id.* at 64, n. 11. Rather, a suspension may ensue only upon a showing of cause. As a result, the Court determined that "state law has engendered a clear expectation of continued enjoyment of the license absent proof of culpable conduct by the trainer" and therefore Barchi asserted a "legitimate claim of entitlement . . . that he may invoke at a hearing." *Id.* (citations omitted). The Court summarized its holding as follows:

> [U]nder New York law, Barchi's license could have been suspended only upon a satisfactory showing that his horse had been drugged and that he was at least negligent in failing to prevent the drugging. As a threshold matter, therefore, it is clear that Barchi had a property interest sufficient to invoke the protection of the Due Process Clause.

*Id.* at 64.

Relying in part on *Barry*, the Fifth Circuit Court of Appeals similarly held that a licensee had a protected property interest in his horse racing license. *Hudson v. Tex. Racing Comm'n*, 455 F.3d 597 (5th Cir. 2006). In *Hudson,* the plaintiff owned and trained race horses. As in *Barry*, one of the plaintiff's horses tested positive for an illegal substance. Addressing the issue of whether a horse

trainer licensed by the Texas Racing Commission has a constitutionally-protected property right in a racing license, the court stated:

> Certain provisions of Texas law . . . lead us to conclude that such a right exists. The Texas Administrative Code provides that a license issued by the Commission may be denied, suspended, or revoked after notice and a hearing. 9 Section 311.6(b) enumerates several grounds for the denial, revocation, and suspension of racing licenses, including, among others, violations of racing rules, a felony conviction, a conviction of a crime of moral turpitude that is reasonably related to the licensee's fitness to hold a license, and providing false information in a license application. Based on the above provisions, we conclude that Hudson has a protected property interest in his racing license.

*Id.* at 600 (referencing *Barry*, 443 U.S. at 64 & n.11).

*Barry* and *Hudson* in essence hold that the creation of a property right in a racing license depends, at least in part, on whether there must be a showing of cause in order to uphold a revocation or suspension.[1] Here, the relevant statute states:

> Any corporation desiring to conduct horse race meetings at which pari-mutuel wagering shall be permitted may apply to the appropriate commission for a license. The license gives its holder the privilege to conduct horse race meetings at which pari-mutuel wagering is permitted. The license does not give its holder a property right. If, in the judgment of the appropriate commission, the public interest, convenience or necessity will be served and a proper case for the issuance of the license is shown, the appropriate commission may issue the license. *The license*

---

[1] The complaint does not state that Plaintiffs' licenses were revoked or suspended; rather it claims that Plaintiffs were "ejected" and were required to leave the property. In Plaintiffs' response to the instant motion, Plaintiffs argue that an ejection is a more severe sanction than a suspension because an ejection requires that the licencee's horses leave the grounds while a suspension does not. (Doc. 15 at 3.) In neither instance are the horses allowed to race. Therefore, for the purposes of resolving this motion, the court finds there to be no legal distinction between an "ejection" and a "suspension" or "revocation" and the court notes that Defendants do not assert any argument based on this distinction.

> *shall remain in effect so long as the licensed corporation complies with all conditions, rules and regulations and provisions of this act. A commission may revoke or suspend the license of any corporation, if the commission finds by a preponderance of the evidence that the corporation, its officers, employees or agents, has not complied with the conditions, rules, regulations and provisions of this act and that it would be in the public interest, convenience or necessity to revoke or suspend the license.* A license is not transferable.

4 P.S. § 325.209(a) (emphasis added). Thus, the statute requires a very specific showing be made in order to uphold the revocation or suspension of a racing license in the sense that the Commission must find, by a preponderance of the evidence, a violation of the Race Horse Industry Reform Act, 4 P.S. § 325.101, *et seq.* Accordingly, here, as in *Barry*, the state law has engendered a clear expectation of continued enjoyment of the licenses absent proof of culpable conduct by Plaintiffs. Under *Barry* and *Hudson*, this is enough to create a property interest in Plaintiffs' licences, notwithstanding the statutory language to the contrary.

Defendants argue in their reply brief that Plaintiffs' livelihood will not be affected by the ejection because "the ejection . . . only prevented [Plaintiffs] from racing their horses at Penn National [and] Plaintiffs are free to continue to pursue their livelihood at other race tracks . . . ." (Doc. 16 at 3.) As a general rule, it is well recognized that:

> Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

10

*Barry*, at 70 (Brennan, J., concurring) (citing *Dixon v. Love*, 431 U.S. 105, 112 (1977); *Gibson v. Berryhill*, 411 U.S. 564 (1973); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 39 U.S. 96 (1978); *Board of Regents v. Roth*, 408 U.S. 564 (1972)). Further, "the extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer a grievous loss." *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). Plaintiffs claim, and Defendants do not deny, that the ejection prevented Plaintiffs from racing at Penn National. It is unclear to what extent the ejection might impart a grievous loss or affect Plaintiffs' livelihood because the record does not reflect the extent to which Plaintiffs raced at Penn National or if, for that matter, horse racing is Plaintiffs' primary occupation or livelihood. Although nothing in the record indicates that Plaintiffs are barred from racing at other racetracks, it seems intuitive that the ejection will likely affect Plaintiffs' livelihood to some extent. In any event, Defendants' attempt to minimize the affect that the ejection has had (or will have) on Plaintiffs' livelihood does not warrant dismissal of Plaintiffs' due process claims.[2]

To the extent that Defendants argue that the Plaintiffs' licenses should be characterized as a privilege as opposed to a right (*see* Doc. 16 at 2) (referencing

---

[2] Moreover, a Pennsylvania federal court has held that a horse trainer's denial of access to a race track that, in turn, led to a loss of work at the racetrack was tantamount to a loss of a constitutionally protected property right. In *Whetzler v. Krause*, 411 F. Supp. 523 (E.D. Pa. 1976), the plaintiff, a thoroughbred horse trainer, was licensed to engage in horse training by the Commission. Without notice or hearing, the plaintiff's license was revoked. Following a hearing in front of the Commission, the plaintiff's license was reinstated, but he was still denied access to, and the right to work at, the racetrack. Plaintiff's complaint alleged §§ 1983 and 1985 civil rights violations. Defendants filed a motion to dismiss, contending, *inter alia*, that the plaintiff's claim did not involve a constitutional right. The court disagreed and held that the revocation had "the effect of restraining him in the enjoyment of constitutionally protected rights – to wit, 'property' in the loss of his job and 'liberty' in seriously affecting, if not destroying, his ability to obtain employment. . . ." *Id.* at 527 (citing *Greene v. McElroy*, 360 U.S. 474 (1959)).

*Hawkeye*, 486 F.3d at 440, for the proposition that there is no property right in a gambling license where the statute characterizes the license as a privilege, not a right), the court is not persuaded by this argument because the Supreme Court has "fully and finally" rejected the distinction between "rights" and "privileges" that once governed the applicability of procedural due process rights. *Roth, supra*, at 571.

Defendants' argument that the language of the statute expressly precludes a procedural due process claim is somewhat perplexing in light of the hearing rights guaranteed to a licensee facing ejection. For example, 58 Pa. Code § 165.231, entitled "Hearing rights" provides, in part:

> b) At the time of or immediately following ejectment of or denial of access to a licensee, the association or Commission agents acting therein shall advise the licensee in writing of his right to demand a hearing by mailed service of the form of notice as shall from time to time be prepared and supplied by the Commission. The form of notice shall be in a form prepared by the Commission and shall be mailed to the most current licensed address of the ejectee by certified return receipt mail.
>
> c) The notice shall advise the ejectee that he shall have a right to demand a hearing upon the ejection if written demand for the same is served upon the association in question and is received by the executive offices of the Commission no later than 48 hours following receipt by the ejectee of the notice confirming ejection. If an ejectee shall timely file a demand for a hearing, the hearing shall be scheduled within 48 hours of the time of receipt of the demand or as soon thereafter as possible. The hearing shall be at the executive offices of the Commission. Notice of the date and time of the hearing shall be forwarded to the most current licensed address of the ejectee and to the executive office of the association.

58 Pa. Code § 165.231(b & c). Moreover, 4 P.S. § 325.215 provides that any ejection shall be reviewable by the Commonwealth Court. ("The action of the commissions in refusing any person admission, or ejecting him from, a race meeting ground or enclosure shall not be because of the race, creed, color, sex, national origin or religion of that person and shall be reviewable by the Commonwealth Court."). At this point, the record is not clear as to precisely which of these guarantees, if any, were provided to the Plaintiffs. Such facts could be material to Plaintiffs' due process claims. The only facts that are clear, and apparently undisputed, are that Plaintiffs were ejected from Penn National; Plaintiff Adamo (and later Plaintiff Gill) requested a hearing on the ejection orders; in neither case was a hearing held. (Complaint at ¶¶ 29, 31, 35, 39, 41, 80).

In short, the court does not find Defendants' argument that Plaintiffs' licenses do not constitute a property right sufficiently compelling to grant dismissal of Plaintiffs' procedural due process claims. Moreover, the facts at this early stage, particularly when viewed in the light most favorable to the Plaintiffs, do not warrant dismissal. An appropriate order will be issued.

s/Sylvia H. Rambo<br>United States District Judge

Dated: March 10, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY ADAMO and
MICHAEL GILL,  :  No. 1:10-CV-02382
  :
    **Plaintiffs**  :
  :
v.  :
  :
MICHAEL DILLON, et al.,  :  (Judge Rambo)
  :
    **Defendants**  :

## **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. 8) is **DENIED.**

                                                s/Sylvia H. Rambo
                                            United States District Judge

Dated: March 10, 2011.