IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY ADAMO** and | : | |
| **MICHAEL GILL,** | : | **No. 1:10-CV-02382** |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL DILLON,** *et al.*, | : | **(Judge Rambo)** |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiffs Anthony Adamo ("Adamo"), a licensed race horse trainer, and Michael Gill ("Gill"), a licensed race horse owner, brought this case challenging the constitutionality of their ejections from Penn National Race Course ("Penn National") pursuant to 42 U.S.C. § 1983. Additionally, Adamo challenges the constitutionality of the subsequent suspension of his horse trainer's license. A bench trial was held from April 23 to April 26, 2012. For the following reasons, the court finds that Plaintiffs' claims fail either as a matter of law or as a result of Defendants' entitlement to qualified immunity.

## I.          Background

Plaintiffs claim that Defendants, several past and present officials of the Pennsylvania Horse Racing Commission ("Commission") violated their Fifth and Fourteenth Amendment rights to procedural due process and equal protection under the law when they were ejected from Penn National. Plaintiff Adamo further claims that his procedural due process rights were violated when he refused to comply with the Commission's investigatory interview request and his license was suspended without a pre-suspension hearing. During the bench trial, the court granted

Defendants' motion for judgment as a matter of law as to Plaintiffs' equal protection claims, finding that Plaintiffs failed to adduce sufficient evidence that they were treated differently from other similarly-situated individuals.  (Transcript, Bench Trial, at 528.)(hereinafter "Tr. at __").  Defendants also moved for judgment as a matter of law as to Plaintiffs' procedural due process claims, arguing both on the merits and, alternatively, that Defendants are entitled to qualified immunity.  The court reserved ruling on these issues.  (Tr. at 528.)

In light of the court's finding that Plaintiffs' remaining procedural due process claims fail as a matter of law or, alternatively, that Defendants are entitled to qualified immunity, the court will refrain from providing a more thorough finding of facts from the testimony and trial exhibits.  It is sufficient, at this point, to recite only the facts stipulated by the parties as undisputed, with supplemental facts and citations to the record as necessary to resolve the outstanding issues.  With that in mind, the court finds as follows:

1.       Plaintiff Michael Gill was a licensed horse owner.  (Tr. at 300; Stipulation of Undisputed Facts ("Stip.") 2.)

2.       Plaintiff Anthony Adamo was a licensed horse trainer.  (Tr. at 253, 268; Stip. 2.)

3.       Defendant Michael Dillon ("Dillon") was acting Executive Secretary of the Commission during all relevant periods pertaining to this lawsuit.  (Tr. at 5.)

4.       Defendant Walter Remmert ("Remmert") was Director of Enforcement for the Commission during all relevant periods pertaining to this lawsuit.  (Tr. at 165.)

5.       Defendant John Hannum ("Hannum") was a commissioner of the Commission during all relevant periods pertaining to this lawsuit.  (Tr. at 225.)

6.          Defendant Corinne Sweeney ("Sweeney") is chairwoman of the Commission.  (Tr. at 118-19.)

7.          Defendant Raymond Hamm ("Hamm") is a commissioner of the Commission.  (Tr. 193.)

8.          Defendant Joseph Mushalko ("Mushalko") is Director of Operations of the Commission.  (Tr. at 367.)

9.          Jockeys and horsemen were threatening to boycott races at Penn National on February 2, 2010.  (Tr. at 21, 46, 81.)

10.          On January 22, 2010, Dillon sent an email to Sweeny, Hamm, Hannum, Mushalko and other officials of the Commission discussing the possibility of a boycott by jockeys at Penn National.  The potential boycott centered on the jockeys' safety concerns regarding Gill's horses.  The email further noted that the jockeys' threats of boycotts were violations of racing regulations, and such a boycott could form the basis of a lawsuit by Gill of interference with his business.  (Tr. 90-92; Defs.' Ex. 72.)

11.          To avoid the boycott, notices of ejection from Penn National were issued to Plaintiffs on February 2, 2010.  The orders of ejection, attached to the notice, were signed by Dillon.  (Stip. 1; Defs.' Exs. 14 & 15.)

12.          The ejections were not based on any violations of horse racing regulations by Plaintiffs.  (Stip. 3.)  Rather, the ejections were issued because Defendants determined Plaintiffs' "continued participation . . . has become inconsistent with the orderly conduct of the race meeting and is therefore inconsistent with the best interests of horse racing."  (Defs.' Exs. 14 & 15.)

13.          Plaintiffs' horses were allowed to continue to race at Philadelphia Park after the February 2, 2010 ejections.  The only other thoroughbred track in

Pennsylvania is Presque Isle Downs, which races between May and November. (Stips. 5 & 6.)

14.         Plaintiff Adamo requested a supersedeas of the February 2, 2010 ejection.  The request was denied by Mushalko.  (Stip. 7.)

15.         Plaintiff Adamo appealed his ejection from the Penn National Race Course within 48 hours of the ejection.  (Stip. 8.)

16.         Plaintiff Gill did not appeal his ejection from Penn National Race Course within 48 hours of the ejection.  (Stip. 9.)

17.         On April 22, 2010, Plaintiff Gill requested that the Commission rescind the ejection or hold a hearing on the matter.  The Commission denied Gill's requests. (Stip. 10.)

18.         Adamo's ejection was rescinded on March 5, 2010.  Gill remains ejected from Penn National.  (Stips. 11 & 13.)

19.         At the time of the ejections, Gill had 49 free stalls at Penn National. Gill did not have stall space at Philadelphia Park.  (Stips. 15 & 16.)

20.         No hearings were held on the ejections either before or after their issuance.  (Stip. 12.)

21.         Following the ejections, Adamo returned to his native Canada .  (Tr. 265, 266.)

22.         While in Canada, Adamo received a letter dated June 28, 2010, from Walter Remmert, Director of Enforcement for the Commission, demanding that Adamo make himself available in Pennsylvania, in person, within ten days for an "investigative interview" and to bring with him documents including bank statements, tax returns for 2008 and 2009 and other personal financial records.  (Ex. 55; Tr. 270-71.)

23.        Adamo did not comply with the letter because he believed the letter was sent to harass him.  (Tr. 271-72, 281.)

24.        As a result of Adamo's noncompliance with the letter, Remmert spoke with Mushalko, who issued an order dated July 19, 2010 suspending Adamo's license "until such time as your are [sic] interviewed by the Director of Enforcement."  (Ex. 56; Tr. 186, 395.)

25.        Adamo received notice of the suspension from the stewards at Fort Erie Race Track in Ontario, Canada.  Adamo was instructed by the stewards to remove his horses from the Fort Erie Race Track within 48 hours.  (Tr. 272.)

26.        Following Adamo's removal of his horses from the Fort Erie Race Track, Mushalko issued a conditional supersedeas, giving Adamo an additional ten days to comply with the letter.  (Tr. 273.)

27.        Adamo then appealed the Commission's decision to suspend him to the Commonwealth Court.  The Commonwealth Court upheld the suspension and ruled that Adamo must submit to the interview in order to have his suspension lifted.  (Tr. 273; *Adamo v. Pa. State Horse Racing Comm'n*, 69 C.D. 2011 (Pa. Cmmw. Ct. May 17, 2011)).

28.        To date, no interview has been held nor scheduled.  (Tr. 273.)


**II.        Discussion**

        At trial, Plaintiffs Gill and Adamo argued that Defendants violated their procedural due process rights under the Fifth and Fourteenth Amendment because they were not afforded a pre- or post-ejection hearing on the merits of the ejection. Plaintiffs also rely heavily on the Supreme Court case of *Barry v. Barchi*, 443 U.S. 55 (1979), in arguing that the lack of a pre-ejection hearing violated Plaintiffs' due

process rights because there was no probable cause of culpable behavior (*e.g.,* violations of horse racing regulations).  Defendants maintained that the ejections were justified because they were issued pursuant to relevant horse racing statutes and regulations that require the Commission to maintain the orderly conduct of the race. In a separate issue, Adamo also argued that his subsequent suspension violated his due process rights because he was not given proper notice of the suspension or a proper hearing on the suspension.  Defendants maintained that his suspension was proper because it was properly issued as a result of Adamo's failure to comply with the Commission's request for an investigative interview.

Somewhat usually, Defendants, at the close of Plaintiffs' case-in-chief, argued for the first time that they are entitled to the protections of qualified immunity.  The argument was made as part of a litany of oral motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 ("Rule 50 motions").  In support, Defendants argued that they were acting pursuant to relevant regulations and case law which permitted them to eject and/or suspend Plaintiffs without a pre-deprivation hearing.  (Tr. at 517-19.)  At trial, Plaintiffs responded to some of the issues raised in the Rule 50 motions but did not directly address the qualified immunity issue.  In light of the undeveloped record on this issue, the court withheld judgment regarding the procedural due process claims and qualified immunity defense, but granted the motion as to Plaintiffs' equal protection claims. Defendants' renewed their Rule 50 motions at the close of trial, but presented scant additional argument as to qualified immunity.  (Tr. 607, 624.)  Once again, the court deferred ruling on the motion.

In their post-trial brief, Defendants once again raise qualified immunity as a defense, stating as follows:

14.  Defendant Dillon is entitled to Qualified Immunity because it is not clearly established that failing to hold a pre-ejection hearing [for Adamo] is a deprivation of Due Process.

15.  Defendant Dillon is entitled to Qualified Immunity because it is not clearly established that failing to schedule an ejection hearing [for Adamo] after the ejection was rescinded is a deprivation of due process.

22.  Defendant Dillon is entitled to Qualified Immunity because it is not clearly established that failing to hold a pre-ejection hearing [for Gill] is a deprivation of due process.

23.  Defendant Dillon is entitled to Qualified Immunity because it is not clearly established that failing to schedule an ejection hearing [for Gill] after the ejection was rescinded is a deprivation of due process.

28. Even if Defendant Sweeney took action with respect to the ejection of Plaintiff Adamo, she is entitled to Qualified Immunity because it is not clearly established that failure to hold pre- or post-ejection hearings results in a due process deprivation.

32.  Even if Defendant Sweeney took action with respect to the ejection of Plaintiff Gill, she is entitled to Qualified Immunity because it is not clearly established that failure to hold pre- or post-ejection hearings results in a due process deprivation.

38.  Even if Defendant Hannum took action with respect to the ejection of Plaintiff Gill, he is entitled to Qualified Immunity because it is not clearly established that failure to hold pre- or post-ejection hearings results in a due process deprivation.

41.  Even if Defendant Hamm took action with respect to the ejection of Plaintiff Adamo, he is entitled to Qualified Immunity because it is not clearly established that failure to hold pre- or post-ejection hearings results in a due process deprivation.

44.  Even if Defendant Hamm took action with respect to the ejection of Plaintiff Gill, he is entitled to Qualified Immunity because it is not clearly established that failure to hold pre- or post-ejection hearings results in a due process deprivation.

49.  Even if Plaintiff Adamo was entitled to a hearing prior to the interview-related suspension, Defendant Mushalko is entitled to qualified immunity because it is not clearly established that an interview-related license suspension violates due process. *Barry v. Barchi*, 443 U.S. 55 (1979). *See also Adamo v. Pennsylvania State Horse Racing Comm'n*, No. 69 CD 2011 (Pa. Commw.) (unreported)

52.  Even if Plaintiff Adamo was entitled to a hearing prior to the interview-related suspension, Defendant Remmert is entitled to qualified immunity because it is not clearly established to an interview-related license suspension violates due process. *Barry v. Barchi*, 443 U.S. 55 (1979). *See also Adamo v. Pennsylvania State Horse Racing Comm'n*, No. 69 CD 2011 (Pa. Commw.) (unreported)

(Doc. 65, Conclusions of Law ¶¶ 14, 15, 22, 23, 28, 32, 38, 41, 44, 49, 52.)

Defendants do not further elaborate on their argument for qualified immunity beyond these rather bare assertions.  Moreover, Plaintiffs' post-trial brief does not respond to Defendants' assertions of qualified immunity.  Because qualified immunity was belatedly raised by Defendants and the substantive arguments on the merits of the defense were minimal, the court ordered additional briefing. Specifically, the court ordered the parties to address both the merits of the defense as well as whether the defense was waived.  The court noted that:

> The court's review of the docket reveals that Defendants did not plead qualified immunity as an affirmative defense in Defendants' answer to Plaintiffs' complaint.  (Doc. 18.) Nor was the issue raised in Defendants' Motion to Dismiss and memorandum in support thereof (Docs. 8 & 14), or Defendants' pre-trial memorandum (Doc. 47).  Therefore, Plaintiffs have not had an opportunity to adequately respond to Defendants' qualified immunity argument. Moreover, to the extent Defendants' assert qualified immunity in their proposed conclusions of law, the argument is cursory, with no application of facts or citations to applicable law.  Accordingly, **IT IS HEREBY ORDERED** that the parties shall submit additional briefing that addresses Defendants' qualified immunity defense and also addresses whether or not the defense of qualified immunity has been waived.

(Doc. 66.)  After reviewing the briefs, the court finds that qualified immunity has not been waived and, where Plaintiffs have alleged sufficient facts to show a constitutional violation, Defendants are entitled to the protections of qualified immunity.  The court will address each issue in turn.

### A.   <u>Waiver of Qualified Immunity</u>

Qualified immunity is an affirmative defense that, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, should be raised in the appropriate responsive pleading.  *See Eddy v. V.I. Water and Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) (Alito, J.).  The United States Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).  The Third Circuit has held that qualified immunity generally must be included in a responsive pleading or it may be considered waived. *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).  Several other circuits have found that the qualified immunity defense can be waived either by failure to raise it in a timely fashion or by failure to raise it with sufficient particularity.  *See, e.g., McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997); *Lord-Butcher v. City of Newport Beach*, 79 F.3d 1153 (9th Cir. 1996) (holding qualified immunity waived where not mentioned until close of defendant's case at trial); *Yates v. Cleveland*, 941 F.2d 444, 448-49 (6th Cir. 1991) (declining to dispose of appeal on grounds of waiver, but noting that defendant did not raise issue of qualified immunity until days before trial); *Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 668 (1st Cir. 1996) (holding that the "defense of qualified immunity may be deemed to have been waived if it is not raised in a diligent manner during the post-discovery, pre-trial phase" but not preventing defendant from raising

the defense on "summary judgment, regardless of whether it was raised during discovery"); *Narducci v. Moore*, 572 F.3d 313, 323-24 (7th Cir. 2009) (upholding district court's finding of waiver where qualified immunity asserted for the first time in defendant's reply brief in support of summary judgment.) The district court has discretion to determine whether the defense was raised within reasonable time limits and with reasonable diligence. *See Eddy*, 256 F.3d at 210.

Notwithstanding the aforementioned cases, prevailing Third Circuit law establishes a more forgiving approach to parties who fail to raise affirmative defenses in an answer. In *Eddy*, the Third Circuit Court of Appeals noted that failing to raise affirmative defenses in an answer does not result in automatic waiver. 256 F.3d at 209 (citing *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991); *Pro v. Donatucci*, 81 F.3d 1283, 1286 n.2 (3d Cir. 1996); and *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1373 (3d Cir. 1993)). The court in *Eddy* went on to adopt this more lenient standard already employed by the First and Sixth Circuits. *Id.* at 210 (citing *Guzman-Rivera*, 98 F.3d at 667; *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1994)); *see also Sharp*, 669 F.3d at 158 (noting that, notwithstanding the preference that parties should assert affirmative defenses early in litigation, there is no firm rule).

In *Eddy*, the Third Circuit reversed the district court's refusal to consider a qualified immunity defense raised for the first time in a motion for summary judgment. The court held that "the District Court must determine . . . whether there was a reasonable modicum of diligence in raising the defense [and] must also consider whether the plaintiff has been prejudiced by the delay." *Id.* The court continued: "the [district court] must inquire whether the defendants violated any scheduling orders in raising the defense [in a belated manner], whether they

delayed asserting the defense for tactical purposes or any improper reason, and, most important, whether the delay prejudiced the plaintiff's case." *Id.*

With these considerations in mind, the court in *Eddy* noted that qualified immunity could be raised (1) in a motion to dismiss at the pleading stage, (2) in a motion for summary judgment after discovery, or (3) as an affirmative defense at trial. *Id.* at 210, n.3 (citing *Guzman-Rivera*, 98 F.3d at 667; *English*, 23 F.3d at 1089).[1]  Thus, the last possible opportunity to raise qualified immunity is by a motion for judgment as a matter of law. *See Howes v. Hitchcock*, 66 F. Supp. 2d 203, 209 (D. Mass. 1999) (citing *O'Connor v. Huard*, 117 F.3d 12, 17 (1st Cir. 1997)).  Here, qualified immunity was not pled as a defense in the answer, nor was it raised in any pre-trial motion or other submission.  Nevertheless, the court will find that Defendants raised it at the last possible permissible time, provided the aforementioned factors weigh in Defendants' favor.  Accordingly, the court must assess: (1) Defendants' diligence in raising the defense; (2) whether Defendants' delay was for dilatory or tactical purposes; (3) whether Defendants violated any court orders; (4) whether any factual disputes required the case to proceed to trial before raising the defense; and (5) whether the delay prejudiced Plaintiffs' case.

It is difficult to ascertain the reason for Defendants' delay in raising qualified immunity, whether it was an intentional tactic or mere inadvertence.  The operative facts, especially those that might pertain to qualified immunity, were largely agreed to by stipulation of the parties.  The only remaining issues to resolve as to qualified immunity were legal in nature.  Thus, there does not appear to be any

---

[1]     This rule also comports with Federal Rule of Civil Procedure 12(h)(2), which states that the defense of failure to state a claim upon which relief may be granted may be raised by motion *or at trial*. *See Schneyder v. Smith*, 709 F. Supp. 2d 368, 386 (E.D. Pa. 2011) ("Under Federal Rule [12(h)(2)], the defense of immunity may be raised in the pleadings, by motion for judgment on the pleadings, or at trial."); *see also English*, 23 F.3d at 1091 (same as to qualified immunity).

practical reasons for the delay and the court can not help but to question Defendants' diligence in raising the defense. However, the court does not question Defendants' overall diligence in defending this suit. Throughout this case, Defendants did not miss a single deadline, and their submissions to the court were otherwise thorough and timely. Defendants have not violated any court orders. The court does not detect any dilatory or other improper motive in failing to raise qualified immunity earlier, nor do Plaintiffs allege any such motives. On the balance, these factors do not weigh heavily in favor of either party. Thus, the court's determination must rest on the most important factor: whether the delay prejudiced Plaintiffs' case.

The court finds that there was no or very little prejudice to Plaintiffs' case. First, the court notes that although qualified immunity was raised by Defendants (1) at trial on an oral motion for judgment as a matter of law following Plaintiffs' case-in-chief, (2) again as a renewed motion following Defendants' case-in-chief, and (3) finally in Defendants' post-trial brief, Plaintiffs have not at any point responded in any measurable way on this issue. To the extent that Plaintiffs were prejudiced by their inability to respond,[2] such prejudice was cured when the court ordered additional briefing on this issue. Pursuant to that order, Defendants were required to more fully argue the application of qualified immunity to this case and address the issue of waiver. Plaintiffs were then permitted two weeks to file a responsive brief, but in fact, needed only three days to file that brief. (Doc. 73.) Thus, the parties were given a full and fair opportunity to develop and respond to the qualified immunity defense.

---

[2]   Plaintiffs may not have responded because, in addition to failing to plead qualified immunity in their answer, Defendants never indicated their intent to raise qualified immunity in the joint statement of the parties filed pursuant to Federal Rule of Civil Procedure 26(f) and Middle District Local Rule 16.3 (Doc. 11), or in their pre-trial memorandum (Doc. 47).

Plaintiffs argue in their supplemental brief that they are prejudiced because Defendants' failure to timely assert qualified immunity deprived Plaintiffs the opportunity to develop a factual record necessary to challenge the defense. Specifically, Plaintiffs argue they were unable to question Defendants or other witnesses regarding qualified immunity. The court is unmoved by this argument because, as set forth below, the relevant issues to be determined with regard to qualified immunity are legal rather than factual in nature. For example, the court must determine whether Defendants' conduct violated a constitutional right and whether that right was clearly established. Such determinations would not hinge on further development of a factual record. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("Whether an asserted federal right was clearly established at a particular time . . . presents a question of law, not one of 'legal facts.'")

In short, although the court has some concerns about Defendants' diligence in raising qualified immunity, the court does not otherwise question Defendants' diligence or motives. The court further notes that Defendants did not violate any court orders. Most importantly, the court does not find any discernable prejudice to Plaintiffs. In fact, Defendants' failure to raise qualified immunity earlier in the litigation allowed this case to proceed further than it may have otherwise. Therefore, qualified immunity has not been waived,[3] and the court must determine whether Defendants are entitled to qualified immunity.[4]

---

[3] Qualified immunity is both a defense to liability and also immunity from suit. *See Mitchell v. Fosyth*, 472 U.S. 511, 526 (1985). By failing to raise the qualified immunity defense prior to trial, Defendants obviously waived the defense with regard to immunity from trial. However, Defendants have not waived the defense with regard to immunity from liability. *See Adams v. City of Phila.*, 1996 U.S. Dist. LEXIS 3683, *5 n.4 (E.D. Pa. Mar. 28, 1996).

[4] Defendants' primary argument against waiver is that Plaintiffs' failure to respond to
(continued...)

## B.     Qualified Immunity Standard

When, as is the case here, a government official's actions give rise to a Section 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as a shield from suit.  *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them "from undue interference with their duties and from potentially disabling threats of liability."  *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow*, 457 U.S. at 818.  In *Saucier v. Katz*, the Supreme Court explained the analytical process for determining when the privilege of qualified immunity has been overcome:

---

[4](...continued)
Defendants' Rule 50 motion regarding qualified immunity renders the issue "tried by express or implied consent" and thus not waived.  In support, Defendants cite Federal Rule of Civil Procedure 15(b)(2), which provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2); *see also Bobrick Corp. v. Am. Dispenser Co.*, 377 F.2d 334 (9th Cir. 1967) (when issues not raised in pleadings are tried by express or implied consent of parties, they shall be treated in all respects as if they had been raised in pleadings . . . .).
       The court is unmoved by this argument because, as stated above, qualified immunity was only mentioned in a cursory way and with little analysis during Defendants' Rule 50 motions.  Moreover, a review of the transcript confirms that the primary focus of the motions was Plaintiffs' equal protection claims, which were dismissed.  Given these circumstances, the court does not find that the issue was tried by express or implied consent.  However, the court's rejection of this argument is inconsequential in light of the court's determination that qualified immunity has not been waived pursuant the factors set forth in relevant Third Circuit case law.

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

533 U.S. 194, 201 (2001) (citation omitted). Although the Supreme Court announced that *Saucier*'s two-step protocol is not mandatory, courts have the discretion to decide whether that procedure is worthwhile in particular cases. *Pearson v. Callahan*, 555 U.S. 223, 240 (2009).

The Third Circuit has explained a "clearly established" right as follows:

> A right is "clearly established" . . . if "the contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Thus, defendants are entitled to qualified immunity if "reasonable officials in [their] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Even where officials "clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles." However, for reasonable officials to be on notice that their conduct would be unlawful, there need not be "a previous precedent directly on point." Rather, there need only be "some but not precise factual correspondence between relevant precedents and the conduct at issue," so that "in the light of pre-existing law the unlawfulness [would be] apparent."

*Larsen v. Senate of Commw. of Pa.*, 154 F.3d 82, 87 (3d Cir. 1998)) (internal citations omitted). The qualified immunity defense cannot be overcome by "bare allegations of malice," *see Harlow*, 457 U.S. at 818, or by allegations of mere negligence, *see Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999). Qualified immunity provides broad protections, protecting "all but the plainly incompetent or

15

those who knowingly violated the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244, __ U.S. __ (Mar. 30, 2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Accordingly, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability.  *See Pearson*, 555 U.S. at 244.

The alleged procedural due process violations at issue here are: (1) Defendants Dillon, Sweeney, Hamm, and Hannum's alleged failure to provide Adamo with a pre-ejection hearing or a hearing following the rescission of his ejection (Counts I, III); (2) Defendants Dillon, Sweeney, Hamm, and Hannum's alleged failure provide Gill a pre- or post- ejection hearing even though Gill did not request a hearing within the applicable time frame (Counts II, IV); and (3) Defendants Remmert and Mushalko's failure to hold a hearing on Adamo's license suspension (Count V).  The court will address the ejections first, and then will address Adamo's suspension.

## C. <u>Adamo's Ejection</u>

The first part of the *Saucier* analysis requires the court to determine whether Adamo sufficiently alleged a violation of a constitutional right.  The court has already taken this under consideration upon denying Defendants' motion to dismiss.  There, following extensive analysis, the court determined that Plaintiffs had alleged sufficient facts to state a procedural due process violation in so far as the allegations pertain to Plaintiffs' ejections.[5]  *See Adamo v. Dillon*, 2011 U.S. Dist. LEXIS 24508 (M.D. Pa. Mar. 10, 2011).  At this point, the court need not determine whether Adamo has actually proven that his ejection without a hearing constitutes a

---

[5]    In that motion, Defendants argued for dismissal solely on the grounds that Plaintiffs do not have a property interest in their licenses, an argument the court rejected.  The court's memorandum did not address the sufficiency of the due process allegations as they pertain to Adamo's suspension.

due process violation.  In fact, the Supreme Court, in relaxing *Saucier*'s two-step protocol, instructs that, in accordance with the rule of constitutional avoidance, courts shall not pass upon a constitutional question if there is also some other ground (*i.e.* qualified immunity) upon which the case may be disposed.  *See Pearson*, 555 U.S. at 241.  Accordingly, already having determined that Adamo *alleged* sufficient facts to state a procedural due process violation, the court will abstain from determining whether Plaintiffs have *proven* such a violation at trial and will determine whether the alleged violations were of a "clearly established" right such that Defendants could have reasonably believed that their conduct was unlawful.  In other words, to determine if Defendants are entitled to qualified immunity, the relevant question is whether Defendants were "plainly incompetent" or in "knowing violat[ion] of the law" by failing to provide Adamo with a pre- or post-ejection hearing. The court finds they were not.

Defendants Dillon, Sweeney, Hamm and Hannum[6] ejected Plaintiffs pursuant to 4 P.S. § 325.215(a) and 58 Pa. Code § 165.231(a).  Under 4 P.S. § 325.215(a), the Commission may:

> refuse admission to and eject from enclosure of the race track operated by any licensed corporation, any person whose presence there is, in the judgment of the commission, inconsistent with the orderly or proper conduct of a race meeting or whose presence or conduct is deemed detrimental to the best interest of horse racing.

---

[6] Defendants argue that Commissioners Sweeney, Hannum, and Hamm took "no action" with respect to the ejection, and argue in the alternative that, if they did, they are entitled to qualified immunity because it is not clearly established that failure to hold a pre- or post-ejection hearing results in a due process violation.  (Doc. 65 ¶¶ 27, 28, 31, 32, 37, 38.)  At trial, the court heard evidence that Dillon advised Commissioners Sweeney, Hamm, and Hannum of his intent to eject Adamo and Gill.  Although the Commissioners did not personally partake in the decision process, they did not object to this course of action.  (Tr. at 95.)  The court will assume that these facts are sufficient to show that the Commissioners took action with respect to the ejections and will analyze their entitlement to qualified immunity.

Likewise, under 58 Pa. Code § 165.231(a), the Commission:

> shall have the right and obligation to deny access to or to eject from facilities of a track a patron or licensee whose presence or conduct is deemed detrimental to the best interests of racing or to the orderly conduct of a racing meet.

Dillon repeatedly testified at trial that the ejections were issued pursuant to the above-mentioned statute and regulation because the presence of Adamo and Gill was adversely affecting the orderly conduct of the races.  (Tr. at 26, 44, 45, 47, 49, 56, 66, 78, 85, 87, 90, 97.)   More specifically, Adamo and Gill's presence was causing numerous other jockeys to boycott the race such that the race would not proceed.  In response to his ejection, Adamo requested a supersedeas, which was denied, and then filed an appeal within 48 hours, as required under 58 Pa. Code § 165.231(c).  No hearing was ever held.

The pertinent regulations do not require a pre-deprivation hearing. Rather, the regulations merely require that a hearing be demanded within 48 hours of receipt of the notice of ejection, and then a hearing be *scheduled* within 48 hours of the time of the receipt of the demand.  Likewise, neither federal nor state case law requires a pre-deprivation hearing in all circumstances.  *See, e.g., Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (noting that due process is "flexible" and calls for procedural protections "as the particular situation demands" and further noting that where "a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."); *Barry*, 443 U.S. at 64 (the state is entitled to impose a temporary, interim suspension where an important state interest is implicated and there exists probable cause of culpable behavior); *Gershenfeld v. Justices of the Sup. Ct. of Penna.*, 641 F. Supp. 1419, 1424 (E.D. Pa. 1986) (an interim or temporary

emergency deprivation of a property right is constitutional, provided that the state has an important interest to protect and probable cause to believe that the plaintiff poses a danger to that protected interest); *Luzzi v. Commw. of Pa.*, 548 A.2d 659, 662 (Pa. Cmmw. Ct. 1988) (Due process is satisfied where racing license suspended provided jockey has notice of suspension and an opportunity to challenge the suspension).  It has also been held that the guarantee of a prompt dispositional post-deprivation hearing is also a critical factor in determining the validity of the previously invoked interim or temporary deprivation of process without a hearing. *Gershenfeld*, 641 F. Supp. at 1424 (citing *Parratt v. Taylor*, 452 U.S. 527, 540 (1981)).  In short, neither the pertinent regulations nor relevant case law *requires* a pre-ejection hearing.

The testimony in this case established that Defendants believed they needed to act quickly in making their decision to eject Gill and Adamo so that the races on February 3, 2010 could proceed as scheduled.  (Tr. 47, 65, 73, 75, 381-82.) Undoubtably, the state has an interest in preserving the integrity of horse racing, an interest "sufficiently important . . . to justify a brief period of suspension prior to affording the suspended trainer a hearing."  *Gilbert*, 520 U.S. at 933 (citing *F.D.I.C. v. Mallen*, 486 U.S. 230, 241 (1988)).  From that, it is reasonable to conclude that the state has an interest in preserving the orderly conduct of a race meeting.  Under these circumstances and in consideration of the aforementioned case law, Adamo's right to a pre-ejection hearing is not clearly established.  It cannot be said that Defendants were "plainly incompetent" or in "knowing violat[ion] of the law" in failing to provide Adamo with a pre-ejection hearing and the record supports that Defendants reasonably believed that their conduct complied with applicable statutory, regulatory,

19

and case law.  Thus, qualified immunity will shield Defendants from liability in this regard.

Adamo was also deprived of a post-ejection hearing.  The record is clear that on February 2, 2010, Adamo was ejected from Penn National.  On March 5, 2010, Adamo's ejection was rescinded.  Adamo argues that his due process was violated by not having a prompt post-ejection hearing as soon as practically possible. (Doc. 73 at 12, 14-15 (citing *Barry,* 443 U.S. at 64).)  There is little evidence to suggest what happened among the parties between February 2 and March 5, 2010, however it appears that the parties were involved in discussions to resolve the matter, which in fact culminated in the rescission of Adamo's ejection.  (Tr. 616.)  In circumstances where parties are working toward the resolution of the underlying dispute, the court does not find it unreasonable to postpone the scheduling of a hearing, pending the outcome of those discussions.  To require a prompt hearing and decision while such discussions are ongoing would have a chilling affect on the parties' ability to amicably settle disputes.  In short, under these circumstances, the court does not find that Defendants were "plainly incompetent" or in "knowing violat[ion] of the law" in failing to provide Adamo with a post-ejection hearing (Counts I & III).  Accordingly, Defendants are entitled to qualified immunity as to their decision to eject Adamo and the failure to hold a pre- or post-deprivation hearing, because Defendants were reasonably reliant upon relevant statutes, regulations, and case law.

### D.  Gill's Ejection

The court can resolve the issue as it pertains to Gill without resorting to a qualified immunity analysis because Gill did not avail himself of applicable appeal procedures.  In order to prevail on a procedural due process claim under 42 U.S.C. §

1983, a plaintiff must show (1) that he possessed a life, liberty, or property interest within the meaning of the Fourteenth Amendment, and (2) that he did not have procedures available to him that would provide him with "due process of law." *Rockledge Dev. Co. v. Wright Twp.*, 2011 WL 588068, at *2 (M.D. Pa. Feb. 10, 2011) (citing *Robb v. City of Phila.*, 733 F.2d 286, 292 (3d Cir. 1984)).

It is evident that Gill had procedures available to him that would have provided him with due process. Specifically, 58 Pa. Code § 165.231, entitled "Hearing rights" provides, in part, as follows:

> b) At the time of or immediately following ejectment of or denial of access to a licensee, the association or Commission agents acting therein shall advise the licensee in writing of his right to demand a hearing by mailed service of the form of notice as shall from time to time be prepared and supplied by the Commission. The form of notice shall be in a form prepared by the Commission and shall be mailed to the most current licensed address of the ejectee by certified return receipt mail.

> c) The notice shall advise the ejectee that he shall have a right to demand a hearing upon the ejection if written demand for the same is served upon the association in question and is received by the executive offices of the Commission no later than 48 hours following receipt by the ejectee of the notice confirming ejection. If an ejectee shall timely file a demand for a hearing, the hearing shall be scheduled within 48 hours of the time of receipt of the demand or as soon thereafter as possible. The hearing shall be at the executive offices of the Commission. Notice of the date and time of the hearing shall be forwarded to the most current licensed address of the ejectee and to the executive office of the association.

58 Pa. Code § 165.231(b & c). Critically, however, Gill chose not appeal his ejection. At trial, Gill testified that he did not appeal because:

> I knew what they were doing and how they were doing it. I went to he Commission for protection, and what I got was a bunch of puppets. [S]o the people who were supposed to protect me are now enforcing a rule that isn't a rule, and they're not even looking to investigate it.

21

(Tr. 322.)  These concerns, standing alone, are insufficient to convince this court that the available procedures were so deficient so as to deprive Gill of due process. Rather, his unwillingness to avail himself of the due process to which he was entitled is a failure to exhaust his administrative remedies.  Not only did Gill have due process procedures available to him, but he voluntarily chose not to avail himself of those procedures.  Under these circumstances, it strains credulity that Gill's procedural due process rights were violated.  Accordingly, Gill's claims of  procedural due process violations by Dillon, Sweeney, Hamm, and Hannum (Counts II & IV) fail as a matter of law.  Even if Gill's due process rights were violated, Defendants' would nevertheless be entitled to qualified immunity because they ejected Gill pursuant to a reasonable interpretation of Pennsylvania statutes and regulations, and they were not "plainly incompetent" or in "knowing violation of the law" for failing to schedule a hearing that was never requested in the first place.

### E.  **Adamo's Supsension**

The final issue to resolve pertains to Adamo's interview-related license suspension and his due process claims regarding the absence of a pre-suspension hearing and the lack of proper notice of a right to a post-suspension hearing.  On June 28, 2010, the Commission sent a letter to Adamo requiring him to make himself available, in person, for an investigative interview within 10 days of receipt of the letter and to bring various documents with him.  The letter stated that failure to honor this directive would result in the immediate and indefinite suspension of his license. (Defs.' Ex. 55.)  In requesting an investigatory interview with Adamo, the Commission was acting pursuant to 58 Pa. Code §§ 161.1(d), 165.181(a) and

163.6(a).[7]   Notably, 58 Pa. Code § 163.6(a) provides that "Failure to report may result in the imposition of disciplinary actions that the stewards or the Commission deems appropriate."  When it became clear that Adamo did not intend to comply with the directive, Mushalko indefinitely suspended Adamo's license.  (Defs.' Ex. 56.)

The Pennsylvania Commonwealth Court has already examined whether Adamo's procedural due process rights were violated in regards to his suspension. *Adamo v. Pa. State Horse Racing Comm'n*, No. 69 CD 2011 (Pa. Commw. Ct. May 17, 2011) (unreported).  Noting that Adamo received sufficient notice of a possible suspension in the June 28, 2010 letter and in light of the Supreme Court's holding in *Barry* (that preserving the integrity of horse racing was a compelling interest that

---

[7]   Section 161.1(d) provides:

> Every licensee to hold a meeting is granted upon the condition that the licensee shall accept, observe and enforce the rules of the Commission.  Furthermore, it shall be the duty of each officer, director and every official and employee of the licensee to observe and enforce the rules.  Licensees are charge with the responsibility of reporting apparent violations of these rules to the Commission and of cooperating in an investigation into the same.

Section 165.181(a) provides:

> The Commission shall have the right at any time to convene and conduct such investigatory hearings as it may deem necessary and appropriate to the proper administration of the [Race Horse Industry Reform Act] or of the provision of this part.  All other rules set forth herein shall apply to such hearings provided, however, that notices of investigatory hearings need not specify which, if any, rules are believed to have been violated.  Such notice shall, however, set forth the general scope of the inquiry to be conducted.

Section 163.6(a) provides:

> A person licenced by the Commission or properly brought before it as a witness in an investigative, adjudicative or rulemaking hearing who is in possession of information regarding attempts or acts done in violation of this chapter or statute affecting racing, shall promptly report the knowledge or information to the stewards, the Commission or its licensed security personnel.  Failure to report may result in the imposition of disciplinary actions that the stewards or the Commission deems appropriate.

allowed postponement of a hearing until after the deprivation, so long as a prompt post-suspension hearing was given), the court found that Adamo's due process rights were not violated.  This court agrees and therefore Adamo's due process claims against Mushalko and Remmert (Count V) fail as a matter of law.  Moreover, even if a violation had occurred, Defendants would be entitled to qualified immunity because it cannot be said that Mushalko and Remmert were "plainly incompetent" or in "knowing violat[ion] of the law" in suspending Adamo absent a pre-deprivation hearing.   Indeed, the aforementioned regulations specifically authorize the Commission to conduct an investigatory interview and to impose any disciplinary action deemed appropriate for failure to comply.  *See* 58 Pa. Code § 163.6(a).  Thus, Defendants were reasonable to believe their conduct complied with the law.

Plaintiffs make one final argument in the alternative.  In their supplemental brief on qualified immunity, Plaintiffs argue that even if qualified immunity shields Defendants, Defendants are still liable for their "initial substantive violation of taking Plaintiffs' property without probable cause of culpable conduct." Plaintiffs admit they are unable to cite any authority because this is a "fundamental precept of constitutional law [that] is so obvious that finding a quote from a case that specifies the point is virtually impossible." (Doc. 73, n.7.)  The court is unable to ascertain precisely what cause of action Plaintiffs are asserting here and, in any event, a post-trial supplemental response brief is no place to argue a new cause of action. Moreover, Plaintiffs' argument that the only instance where a pre-deprivation hearing is not necessary is where the state actors have probable cause of culpable conduct is too rigid because there are other instances where the absence of a pre-deprivation hearing is constitutional.  For example, as noted by the court above, an interim or emergency deprivation of a property right is constitutional (1) where a State must act

quickly, or (2) where it would be impractical to provide pre-deprivation process.  *See Gilbert*, 520 U.S. at 930 (also noting that due process is "flexible" and calls for procedural protections "as the particular situation demands").  Moreover, the court has already found that the state has an interest in preserving the integrity of horse racing, an interest "sufficiently important . . . to justify a brief period of suspension prior to affording the suspended trainer a hearing."  *Gilbert*, 520 U.S. at 933.  Accordingly, the court rejects Plaintiffs' argument that Defendants committed a "substantive" violation by taking Plaintiffs' property without probable cause of culpable conduct.[8]

## III.        Conclusion

In short, the court finds that Plaintiff Adamo's procedural due process claim against Defendants Dillon, Sweeney, Hamm, and Hannum (Counts I & III) fail because Defendants are entitled to qualified immunity.  Gill's procedural due process claim against Dillon, Sweeney, Hamm, and Hannum  (Counts II & IV) fails as a matter of law because Gill failed to exhaust his administrative remedies by not appealing his ejection.  Lastly, Adamo's procedural due process claim against Remmert and Mushalko (Count V) fails as a matter of law in accordance with the Commonwealth Court's decision in *Adamo v. Pa. State Horse Racing Comm'n*, No. 69 CD 2011 (Pa. Commw. Ct. May 17, 2011).

---

[8]  Defendants filed a motion for leave to amend answer concurrently with their post-trial brief on qualified immunity.  (Doc. 69.)  Defendants seek to amend their complaint under Federal Rule of Civil Procedure 15 to add qualified immunity as a defense.  In light of the holding above, the court does not find an amended answer is necessary, and will therefore deny this request.

An appropriate order will be issued.

s/Sylvia H. Rambo
United States District Judge

Dated:  October 16, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY ADAMO and** | : | |
| **MICHAEL GILL,** | : | No. 1:10-CV-02382 |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL DILLON, et al.,** | : | (Judge Rambo) |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum of law, it is **HEREBY ORDERED** that judgment is granted in favor of Defendants and against Plaintiffs because Defendants are entitled to qualified immunity as to Counts I and III and Plaintiffs' claims in Counts II, IV and V fail as a matter of law.  It is **FURTHER ORDERED** that Defendants' motion to file an amended answer (Doc. 69) is **DENIED**.  The Clerk of Court shall enter judgment and close this case.

s/Sylvia H. Rambo
United States District Judge

Dated:  October 16, 2012.